(Hamilton County Court of Common Pleas. \

FUGMANN et al. v. TEOBALD et al.

---

*Wills—Ohio Statutes of Mortmain.*—Bequests for religious purposes, in a will which is executed within a year prior to the death of the testator, are void as against a "designated heir." Section 5915 construed.

(Decided December, 1895. )

---

WRIGHT, J.

Joseph and Margaretha Fugmann were husband and wife without children; in 1856 they took into their family Frank Held, at the age of six years, and reared him; he remained a member of their family and household until his marriage in 1878, at the age of twenty-eight years. Margaretha Fugmann had a sister, by name McGovern, who died leaving a daughter, Katie Margaretha McGovern. In 1886, when the girl Katie was aged eleven years, she also was taken by Margaretha Fugmann into her family, treated in all respects as her own child, and there remained until Margaretha's death in 1894, her husband having died previous to that time.

Upon March 5th, 1891, after her husband's death, Margaretha Fugmann, by proceedings had in the Probate Court of Hamilton County, formally designated the aforesaid Frank and Katie her heirs at law, in accordance with the provisions of Section 4182, R. S. Upon the next day, March 6th, the State Legislature upon application, changed the names of Frank Held and Katie Margaretha McGovern to Frank Fugmann and Katie Margaretha Fugmann respectively. 88 O. L., 699.

Margaretha Fugmann died April 8th, 1894, leaving a will and some considerable property, consisting chiefly of real estate.

By this will she bequeathed Frank $100, Katie $300 and the household furniture, together with an additional sum of $1,000 to be held in trust for Katie until she attained to the age of twenty years. Amongst numerous kinfolk of herself and husband she distributed $2,100, bequeathed $300 to the pastor of St. Francis Seraphicus Roman Catholic Church and his successors "for the saying of masses for the repose of my soul and the soul of my deceased husband;" to the pastor of St. Clement's Roman Catholic Church for the saying of masses, $100; to the St. Francis Hospital, $100; to the St. John Cemetery, $100; to a Catholic church in Germany, $500; "all the rest and residue of my estate, wherever situate, and be the same real, personal or mixed, I give and bequeath unto the pastor of St. Francis Seraphicus Roman Catholic Church, or his successors, for the saying of masses on the day of my death and that of my husband."

Her death occurring within a year after the making of this will, it is claimed that the bequests for religious and charitable purposes are void as against Frank and Katie Fugmann under the Ohio statute of mortmain. That statute, Section 5915 Revised Statutes, is in part as follows: "If any

testator die leaving issue of his body or an adopted child, living, or the legal representative of either, and the will of such testator give, devise, or bequeath the estate of such testator, or any part thereof, to any benevolent, religious, educational, or charitable purpose * * * such will as to such gift, devise, or bequest, shall be invalid unless such will shall have been executed according to law, at least one year prior to the decease of such testator.''

Perhaps at first reading it would seem impossible to include Frank and Katie in either of the two classes of persons specified in the section, as they are not in fact ''issue of the body'' of the testatrix, nor are they ''adopted children;'' for very likely this latter class should be limited to children who are adopted in accordance with the provisions of the statute for adoption, and includes only those children who are the subjects of a statutory adoption. Yet, although a statute plainly expresses a certain meaning when considered alone, an entirely different import may attach to it when considered in connection with other statutory enactments. It being necessary in the interpretation of a statute, to come at that intention which the legislative body undertook to express by the words used, there should be considered not only the statute in question, but all other statutes which serve to indicate or elucidate the legislative intent upon the particular matter. For if a meaning which seems plain where a section is considered alone, prevents the operation and effect of another section when the two are considered together, it is at once doubtful that the legislature intended to attach to the one section that particular meaning which is seemingly so plain. When several statutes are considered not independently, but together, and it then be clear that the giving of the apparently plain meaning to the one must strip the other of all force and effect, it is then pretty clear that the legislature did not intend to attach that meaning to the one; it must be put beyond question that the legislature intends some effect to attend each and every enactment, and this being so, each of the several enactments, or any one of them, must be so limited as to permit of operation for all, whenever such limitation is necessary to the giving of effect to any of the others. A statute must be given such construction as will not only give it effect, but also permit of effect for all other statutes.

The phrase, ''issue of the body,'' is capable of two constructions; it may be that the legislature intended it to apply only to those who were ''in fact'' issue, or it may be that it was intended to embrace all those whom the law placed in the position and class of ''issue''; does it include only those who are ''issue'', as matter of fact, or does it extend to those who are regarded as ''issue''for purposes of law? If, by provision of law, strangers under certain conditions of fact are put in the class of ''issue of the body,'' then it would seem that when the phrase is used by the legislature, it should be held to include those strangers whom the law has already put in the class.

Section 5915, above quoted, is not the only statute which bears upon the question of what the legislature meant by ''issue of the body.'' Section 4182, R. S., provides as follows:'' A person of sound mind and memory may appear before the probate judge of his county, and in the presence of such judge * * * file a written declaration subscribed by him * * , * declaring that * * * he or she, did designate and appoint another * * * to stand toward him or her in the relation of an heir at-law in the event of his or her death; thereupon such judge * * * shall enter that fact upon his journal and make a complete record of such proceedings.'' If this were all of the statute, Frank and Katie could in no wise be classed as ''issue of the body'' of Margaretha, simply because

they have been designated "heirs at law;" while issue of the body are always "heirs," yet "heirs" are not always "issues of the body," and while this much of the statute does put them in the class of "heirs," yet it does not put them in the class of "issue of the body." "Issue of the body" and "children born in lawful wedlock" are convertible terms, but "heirs" and "issue of the body" are not. A person may be "heir" to another person without being "issue of the body" of that other, but no one can be "child" of another without being both "heir" and "issue of the body" of that other.

The foregoing quotation from Section 4182 is but a part of it; we have so far observed that a stranger may be designated "an heir at law;" we have not yet observed what effect follows when the designation is made. Does the statute place the designated heir in the class of "heirs at law" only generally? Does it place him in the class of children of the designator, in the class of brothers and sisters of the designator, or in the class of ancestors? When the designator dies, does the designated heir take when there are "children," or does he take only in default of "children? If he takes only when there are no children, does he then take with brothers and sisters of the designator, or does he take only in default of brothers and sisters? Let us recur to the statute; it continues: "the person thus designated shall be deemed and held to stand in the same relation, for all purposes, to such declarant as he or she could, if a child born in lawful wedlock"—a clear answer to all the preceding queries: the designated heir takes ahead of "ancestors," ahead of "brothers and sisters," and with "children born in lawful wedlock." In short words, the statute makes the designated heir a "child born in lawful wedlock" for all purposes.

Then let us start with a condition of fact. Frank and Katie have been "designated heirs at law;" to this condition of fact the law attaches, and makes them in law, "children born in lawful wedlock for all purposes;" they are not so in fact, but we are not dealing with the fact so much as we are dealing with the result which the law attaches to conditions of fact; the fact is that they are "designated;" the law is that when they are designated, they shall be held as "children born in lawful wedlock." And now we have Frank and Katie standing in the law as "children" for all purposes. Who are children? Children are "issue of the body;" whoever is child," is "issue of the body;" Frank and Katie are "children" not in fact, "but for all purposes" in law; therefore, they are "issues of the body," not in fact, but for all purposes in law; the law puts them in the class of "issue of the body."

It is quite clear that the legislature did not intend to avoid bequests for religious purposes, only when the testator died leaving those who were, "in fact" issue of his body, for the statute in express words avoids the will as to adopted children; the interpolation of the term, "adopted children," together with the term, "issue of the body," indicates that the legislature intended not to limit the application of the statute to "children in fact," but to extend it to all whom the law classed as "children," to all who were regarded as children for the purposes of law.

Then this proposition is established; the legislature intended that the application of the statute should not be limited to those who are, in fact, issue of the body; which is a strong reason for inferring that it intended it to extend to all whom the law classed as issue of the body, independent of the question of "issue in fact."

Had Margaretha died intestate, Frank and Katie would undoubtedly have taken her estate; had she died intestate and leaving an own child, then again would Frank and Katie have taken with the child; had she

died leaving this will and an own child, then undoubtedly the will would be avoided, and Frank and Katie would have shared the estate with the child. Why? Not because she left an own child, but because the law had put them in the place of children; it would not do to say the will was void only as to the own child and that he would take to the exclusion of Frank and Katie, for after the will was avoided the question would still remain, "Who shall take the estate?" The own child could not take to the exclusion of Frank and Katie, because the own child would not be the only one who was entitled to take; he would take because he was child in fact, Frank and Katie would take with him because they were by law put in the place of children for all purposes. If the will be void against one because he is the "child," then it is equally void against others who are children for all purposes. Otherwise you are legislating away part of Section 4182. The legislature there says, "they are children for all purposes;" the courts cannot say "they are not children for all purposes, but for some purposes only."

Whoever reads the statute (5915) must say, "if there are children, the bequests are void;" then we inquire of the facts, "are there children?" and response comes, "there are those who are children for all purposes." This is enough; it is immaterial whether or no there be children in fact; if there be those who are "for all purposes" children, the bequests are void as against them; otherwise you are changing the word "all" into the word "some;" you are taking from the legislature its prerogative of legislation, you are amending a legislative enactment. If you read this statute (5915) and then say, "the bequests are good against Frank and Katie," you must also say, "because they are not children for the purpose of avoiding the will;" but the legislature says, "they shall be held to stand in the same relation for all purposes as children."

If the own child can avoid the bequests because he stood in the relation of child, then those who stand in the relation of children "for all purposes," may also avoid it. If these bequests be not void against Frank and Katie, then they do not "stand in the relation of children for all purposes," and in the case of their designation, Section 4182 is deprived of all force and effect; they have been designated heirs at law, and yet do not stand in the relation of children; such construction for the one statute (5915) deprives the other statute (4182) of all effect upon the designation of Frank and Katie; yet it is manifest that the legislature intended the designation to have some effect in every case of designation, not only in some cases.

Let us reason a little by analogy. The statute of descent and distribution (Sec. 4158) provides: "When a person dies intestate, having title to any real estate which will come to such intestate by descent, devise or deed of gift from an ancestor, such estate shall descend and pass to his or her kindred in the following course: First—To the children of such testate." Had Margaretha died intestate and this statute alone were being applied, it would at once be concluded, "Frank and Katie cannot take at all because the statute vests the estate only in kindred." But such a conclusion would be rendered utterly fallacious by a consideration of the statute for designating an heir; it would have to be said, "It is true that they are not kindred, but children are kindred, and the law puts them in the place of children; therefore the legislature intended the word "kindred" to extend to all whom the law put in the place of kindred, and not to be limited to kindred in fact. It can with equal force be asserted that "they are not issue of the body," yet children are issue of the body, and the law puts them in the place of children.

Take Sec. 4159 concerning descent, as follows: "if the estate came

not by descent, devise or deed of gift, it shall descend and pass as follows: First—To the children of the intestate." It must again be said, "It is clear that Frank and Katie are not children, and it is equally clear that they inherit by virtue of the statute for designating an heir; therefore the legislature did not intend the word 'children' to ʋ limited to those who were children, but intended it to extend to aⁱ whom the law put in the class of children".

Now suppose that in these two sections concern⸱ ⸱escent, the legislature had used the term, "issue of the body" instead oᴸ the word "children"; they would read: Section 4158. "When * • * * title came by descent, devise or deed of gift from an ancestor, such estate shall descend and pass * * * First—To the "issue of the body of such intestate * * *."

Section 4159. "If the descent came not by descent, devise or deed of gift it shall descend and pass * * * First—To the issue of the body of such intestate. * * * In neither case would Frank and Katie be issue of the body, yet they would take in both cases. Why? Because the statute, for designating an heir, makes it clear that the legislature intended "issue of the body" to include all whom the law classed as "issue of the body"; it must have so intended, if it intended the statute for designation to have any meaning, any effect; so must it have intended when enacting the mortmain statute; if it did not then so intend, it could not have intended a designated heir to be deemed to stand in the relation of child "for all purposes," yet it has said in 4182 that a designated heir shall be deemed to stand in the relation of child for all purposes.

It must therefore be held that the legislature intended the phrase, "issue of the body" to extend to all whom the law classed as "issue," and not to be limited to those who were in fact "issue." As to Frank and Katie the religions and charitable bequests are void. It is clear that the testatrix intended the valid legacies to be paid out of her real estate; they are therefore charges against it.

Goebel and Bettinger, for Frank Fugmann.

Carr and Speiser, for Margaretha Fugmann.

Lincoln, Stevens and Smith, for the church.

Henry Baer, for legatees.